## CARROLL ELECTRIC CO. v. FREED–EISEMANN RADIO CORPORATION.

### No. 5140.

Court of Appeals of District of Columbia.

Submitted May 7, 1931.

Decided June 1, 1931.

Chas. A. Douglas and Edmund D. Campbell, both of Washington, D. C., for appellant.

Max L. Rosenstein, of Newark, N. J., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from an order quashing service of summons upon a foreign corporation.

The Carroll Electric Company, a District of Columbia corporation, plaintiff below, sued the Freed-Eisemann Company, a New York corporation, for damages because of the alleged breach of a contract existing between them relating to certain dealings in radio equipment.

A writ of summons was issued for the defendant, which was returned by the United States Marshal for the District of Columbia with the following indorsement, to wit, "served copies of the declaration, affidavit, and this summons, on the Defendant Corporation within named by serving Fred McCarthy, Salesman, in charge personally, July 18, 1929."

Thereupon, by special appearance, the defendant moved to quash this service, alleging in substance that it was a foreign corporation and was not doing or transacting business in the District of Columbia at the date of the alleged service, and did not have or maintain an office or an agent therein, and that McCarthy upon whom service was made was not a "salesman in charge," nor doing or transacting business for defendant in the District, except for assistance rendered in soliciting orders for merchandise.

This motion was heard upon affidavits and was sustained. The service was quashed, and the present appeal was taken.

This subject is governed by section 373, c. 15, tit. 24, of the Code of the District of Columbia 1929, reading as follows:

"Service on foreign corporations.—In actions against foreign corporations doing business in the District all process may be served on the agent of such corporation or person conducting its business, or, in case he is absent and can not be found, by leaving a

994

copy at the principal place of business in the District, or, if there be no such place of business, by leaving the same at the place of business or residence of such agent in said District, and such service shall be effectual to bring the corporation before the court.

"When a foreign corporation shall transact business in the District without having any place of business or resident agent therein, service upon any officer or agent or employee of such corporation in the District shall be effectual as to suits growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the said District." '

The relations between the two corporations were created by a written contract called a "Distributor's Franchise" entered into by them in New York City on May 1, 1929, wherein the Freed-Eisemann Radio Corporation is designated as the "Manufacturer" and the Carroll Electric Company as the "Distributor." The following stipulations, among others, appear in the contract.

"1. The Manufacturer agrees to and does hereby grant to the Distributor a Freed-Eisemann Distributor Franchise for the term and subject to the conditions of this Agreement, in the following described territory; District of Columbia, Virginia, Maryland, Part of West Virginia, Part of Delaware.

"2. The Distributor agrees to carry at all times a representative stock of the products of the Manufacturer, and to exert every reasonable effort to sell the products of the Manufacturer at wholesale within said territory, and to secure an adequate number of dealers to sell said products at retail within said territory.

"3. The Distributor agrees to purchase the products of the Manufacturer in accordance with the Manufacturer's formal acknowledgment of orders at a discount of 50% and 10% from list price, F. O. B. factory at Clifton, New Jersey, payment less 2% to be made on or before the 10th of the following month.

"4. The Distributor agrees to have every new dealer to whom the Distributor sells the Manufacturer's products, approved by the Manufacturer, and to have said dealer execute in triplicate the Manufacturer's "Authorized Dealer Contract", a specimen of which is annexed hereto, and to forward the same in triplicate to the Manufacturer. If approved and executed by the Manufacturer, one copy of said contract shall be kept by it,

one copy shall be returned to the Distributor and one copy shall be sent by the Manufacturer to the dealer."

"10. The Distributor agrees to act as a wholesale Distributor of the Manufacturer within the territory specified in paragraph '1' hereof, and to maintain at the Distributor's expense an office and show-room within the territory hereby assigned, with an efficient service department and sales force adequately equipped to service and sell at wholesale the Manufacturer's products.

"11. The Distributor agrees not to sell, advertise, offer or display for sale any radio sets, speakers, parts or tubes other than those furnished by the Manufacturer during the term of this Agreement."

It appears that the contract between the two corporations was terminated prior to the beginning of this case, but that a contract identical in form with this was then in existence between the manufacturer and the Oriole Phonograph Company, a corporation of the District of Columbia, and consequently the termination of the former contract is not important in this particular.

The terms of the contract between the parties have the effect of creating a limited agency in the distributor, under which the latter discharged various obligations for the manufacturer in disposing of its products within the specified area. The distributor was not an independent merchant dealing with the manufacturer upon its own initiative, but conducted its business in the District of Columbia in conformity with the stipulations contained in the contract. The activities thus provided for constituted the transaction of business by both parties not only in New York City, where the contract was made, but also in the District of Columbia, within which it was in part carried out. The case thus falls within the provisions of the second paragraph of section 373 supra, and the service of summons on McCarthy, who was an employee of the manufacturer, was valid under that paragraph. Toledo Computing Scale Co. v. Miller, 38 App. D. C. 237; Hoffman v. Washington-Virginia Railway Co., 44 App. D. C. 418; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359, 47 S. Ct. 400, 71 L. Ed. 684; Wilson v. Hudson Motor Car Co. (D. C.) 28 F. (2d) 347; La Porte Heinckamp Motor Co. v. Ford Motor Co. (D. C.) 24 F.(2d) 861.

The order of the lower court quashing the service of summons is reversed, with costs, and the cause is remanded for further proceedings not inconsistent herewith.